UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.   CASE NO. 3:22-cr-23-BJD-MCR

AARON ZAHN
RYAN WANNEMACHER
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant Wannemacher's Motion to Sever (Docs. 102 and S-103; Motion) and the Government's response in opposition (Doc. 135). Defendant Zahn also filed a Motion for Leave to File a Motion to Sever and attached the Motion to Sever as an exhibit (Docs. 316 and S-317) to which the Government responded (Doc. 324).[1]

### A. Background

Defendants are charged in a two Count Indictment for conspiring to steal municipal funds (Count I) and committing wire fraud (Count II). (Doc. 1). This case involves a voluminous evidentiary record. At issue in these Motions, and more generally in this case, is the admissibility of some records given the two codefendants have provided statements protected under

---

[1] The Court notes that Defendant Zahn's Motion was filed out of time and without good cause for delay. Nevertheless, the Court considered the arguments presented in Defendant Zahn's Motion.

Garrity v. New Jersey, 385 U.S. 493 (1967). The minutiae of the admissibility of statements, how they may have been used in the grand jury hearing, and whether evidence is inadmissible in trial is subject to other motions. (See, e.g., Docs. 114, 115). At issue here is whether severance is mandated when one codefendant wants to use the other's Garrity statement in trial.

### a. *Allegations from the Indictment*

Defendants are alleged to have conspired to defraud Jacksonville Electric Authority (JEA), which is the public utility owned by the City of Jacksonville (COJ). (Doc. 1 at 1, 8). Defendant Wannemacher was the Director of Financial Planning and Analysis for JEA and owed a fiduciary duty to JEA, the JEA Board of Directors, and COJ. Id. at ¶ 2. Defendant Zahn was the Chief Executive Officer of JEA and owed a fiduciary duty to JEA, the JEA Board of Directors, and COJ. Id. at ¶ 1. Defendants allegedly created and designed a performance unit plan (PUP) that was a long-term incentive (LTI) compensation plan that would have paid hundreds of millions of dollars in bonuses, primarily to the top JEA executives, including to both Defendants, upon sale of JEA's assets and liabilities. Id. at ¶ 15.

Florida law requires public entities like JEA to use a procurement process to transfer ownership. Id. at ¶ 12. JEA's process is called an Invitation to Negotiate (ITN), and it required a written solicitation for competitive sealed replies to select one or more vendors or bidders with which

to commence negotiation for the procurement of commodities or contractual services. Id. In July 2019, the JEA Board formally authorized an ITN to invite bidders to bid on JEA's assets and liabilities. Id. at ¶ 13.

The Indictment alleges that Defendant made false and fraudulent representations to the JEA Board of Directors about material facts about the formula for the PUP that would be linked to the ITN, knowing that if JEA was sold, the PUP would pay Defendants and others exorbitant sums of money from funds that would have otherwise gone to the COJ General Fund once JEA was sold. Id. at ¶ 19. The Indictment further alleges other actions taken by Defendant Wannemacher in calculating the PUP and in explaining JEA's market performance as a public utility to the JEA Board of Directors. See id.

## B. Legal Standard

Under Rule 14 of the Federal Rules of Criminal Procedure (Rules), "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." "The decision whether to grant a severance lies within the district court's sound and substantial discretion." United States v. Mosquera, 886 F.3d 1032, 1041 (11th Cir. 2018). "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the

- 3 -

district court's sound discretion." Zafiro v. United States, 506 U.S. 534, 538 (1993).

"Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources." United States v. Lopez, 649 F.3d 1222, 12233 (11th Cir. 2011). "[D]efendants who are indicted together are usually tried together." Id. at 1234 (internal quotations omitted). While this rule "is even more pronounced in conspiracy cases," the rule is not "ironclad." Id.; see also Mosquera, 886 F.3d at 1041.

"[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. The Supreme Court explains further:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. See Kotteakos v. United States, 328 U.S. 750, 774–75 (1946). Evidence

>that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. See Bruton v. United States, 391 U.S. 123 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. See, e.g., Tifford v. Wainwright, 588 F.2d 954 (5th Cir. 1979) (per curiam). The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in Richardson v. Marsh, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. See 481 U.S. [200,] 211 [(1987)].

Id.

### C. Discussion

In his Motion, Defendant Wannemacher explains Defendant Zahn's Garrity statement "is exculpatory to Mr. Wannemacher, and its substance is not available elsewhere." Motion at 1. Defendant Wannemacher further argues he has a Fifth and Sixth Amendment right to introduce the Garrity statement in his defense. Id. Defendant Zahn's argument is the same. Essentially, Defendant Zahn wishes to introduce evidence of Defendant Wannemacher's statements that may be exculpatory but that may be inappropriate for a jury to hear as it relates to the evidence against Defendant Wannemacher. (Doc. S-317.1 at 3).

A defendant arguing for Rule 14 severance must show "(1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the codefendant would indeed have testified at a separate trial." United States v. Machado, 804 F.2d 1537, 1544 (11th Cir. 1986). After making such a showing, a district court must then "(1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion." Id.

Here, Defendant Wannemacher argues Defendant Zahn's purported Garrity statement is needed to show there was no fraud involved in Defendant Wannemacher's statements to the JEA Board about the ITN and PUP. See Motion at 10–13. Defendant Zahn intends to use Defendant Wannemacher's Garrity statements to reveal inconsistencies and to provide clarity and context. (Doc. S-317.1 at 8).

Mr. Wannemacher presents a sworn statement made by Defendant Zahn that Mr. Wannemacher would like to use in his defense. (See Docs. 103.1, 103.2). If such evidence is deemed Garrity-protected and were presented in a joint trial, the statement would violate Mr. Zahn's Fifth Amendment right against self-incrimination. Garrity, 385 U.S. at 494–495,

498–500 (explaining that after police officers were questioned as part of an investigation by the state attorney general, those officers had not waived their Fifth Amendment rights against self-incrimination by answering those questions).

The sworn statement and supporting argument provided in Defendant Wannemacher's Motion help the Court conclude Defendant Wannemacher has a bona fide need for the evidence. Mr. Zahn's statement cannot be produced in any other way without complicating Mr. Zahn's constitutional rights. For example, if Mr. Wannemacher produces Mr. Zahn's sworn statement during trial, such production may compel Mr. Zahn to take the stand to defend himself.

Missing in the threshold Machado analysis is whether Mr. Zahn or even Mr. Wannemacher would testify if the case is severed completely. See United States v. Cobb, 185 F.3d 1193, 1198 (11th Cir. 1999) (noting that "there is authority for th[e] proposition" of denying severance for failing to meet the fourth Machado factor, particularly when a codefendant qualifies his willingness to testify based on the order of the severed trials).

Even absent the fourth Machado factor, the Court is inclined to sever this case, in part. As has happened in other criminal matters in this Court, the Court has seated two juries in one trial, including instructions to the two juries at the outset of the trial. See United States v. Wilkie, No. 3:10-cr-276-

MMH-JBT, (Doc. 219), (M.D. Fla. Mar. 22, 2012) (providing the Court's proposed jury instruction in a case with two separate juries).[2]

Seating two juries will preserve both Defendants' constitutional rights while also avoiding pending questions about how to treat a codefendant's out-of-court statement, even if it is redacted. See United States v. Hunter, No. 18-cr3074-cr (L), 2022 WL 1166623 (2nd Cir. Apr. 20, 2022), cert. granted sub nom. Samia v. United States, No. 22-196, 143 S. Ct. 542 (2022) (granting *certiorari* to determine whether "admitting a codefendant's redacted out-of-court confession that immediately inculpates [another] defendant based on the surrounding context" is constitutional).

Accordingly, after due consideration, it is

**ORDERED:**

1. Defendant Zahn's Motion for Leave to file Motion to Sever (Doc. 316) is **GRANTED**. The Court accepts and considers Defendant Zahn's Motion to Sever (Docs. 316.1 and S-317.1).

---

[2] Even assuming Defendant makes a threshold showing under Machado, the Court does not find the remaining balancing test weighs in Defendants favor for a full severance. In the interest of judicial administration and economy, the Court will save time and resources by seating two juries for one trial. The alternative would be having two multi-week trials, showing the same evidence and calling the same witnesses.

2. Defendant Wannemacher's Motion to Sever (Docs. 102 and S-103) and Defendant Zahn's Motion to Sever (Docs. 316.1 and S-317.1) are **GRANTED in part**.

    a. The trials shall be severed to the extent that the Court will empanel separate juries to consider the evidence and charges against each Defendant separately.

**DONE** and **ORDERED** in Jacksonville, Florida this 16th day of January 2024.

BRIAN J. DAVIS
United States District Judge

2

Copies furnished to:

Counsel of Record